# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

YOLANDA TURNER ON BEHALF
OF HERSELF AND ALL OTHERS
SIMILARLY SITUATED,

     Plaintiff,

v.                                Case No. 6:21-cv-00161-CEM-GJK

ROSEN HOTELS AND RESORTS,
INC.,

     Defendant.

_____

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR ORDER (1)
PRELIMINARILY APPROVING SETTLEMENT AGREEMENT; (2) APPROVING
FORM AND MANNER OF NOTICE TO THE CLASS; (3) SCHEDULING A FINAL
FAIRNESS HEARING FOR THE FINAL CONSIDERATION AND APPROVAL OF
THE SETTLEMENT AND (4) FINALLY APPROVING THE SETTLEMENT**

     The parties, aided by Mediator Carlos Burruezo, have reached a fair settlement in this

matter. Therefore, Yolanda Turner ("Class Representative"), on behalf of herself and on behalf of

the individuals named on Schedule 1 to the Settlement Agreement[1] (the "Proposed Class") on the

one hand, and Rosen Hotels and Resorts, Inc. ("Defendant") on the other hand, sometimes

collectively referred to as the Parties, submit this memorandum of law and attached exhibits in

support of their Joint Motion for an Order (1) Preliminarily Approving the Settlement Agreement

between the Parties; (2) Approving the Form and Manner of Notice to the Class; (3) Scheduling

---

[1] The proposed Settlement Agreement is attached hereto as Exhibit A.

a Final Fairness Hearing for the final consideration and approval of the Settlement Agreement; and (4) Finally Approving the Settlement Agreement (the "Joint Motion").

## Jurisdiction

1.      This Court has jurisdiction over this Joint Motion under 28 U.S.C. § 1331 and 29 U.S.C § 2104 (a)(5).  Venue of this proceeding and this Joint Motion is proper in this district pursuant to 29 U.S.C. § 2104(a)(5).

## Background

2.      On or about January 22, 2021, the Class Representative filed a Class Action Complaint and Jury Demand against Defendant (the "Complaint") pursuant to the Worker Adjustment and Retraining Notification Act of 1988 29 U.S.C. §§ 2101-2109 (the "WARN Act"). The Complaint alleges a Rule 23 class action asserting that Defendant violated the WARN Act (the "WARN Act Litigation").  The Complaint alleges that Defendant employed more than 100 employees who worked at least 4,000 hours per week within the United States; and that Defendant effected a "mass layoff" or "plant closing", as defined in the WARN Act, at multiple Florida facilities. The Complaint further alleges that the Class Representative and the other similarly-situated former employees suffered a loss of employment as the reasonably foreseeable consequence of the mass layoffs or plant closings and are "affected employees," as defined by 29 U.S.C. §2101(a)(5); that these former employees did not receive from Defendant the advance written notice, as required by the WARN Act; and that Defendant failed to pay them 60 days' wages and fringe benefits, as required by the WARN Act.  The Complaint further alleges that the proposed class meets the requirements of Fed. R. Civ. P. 23.

3.      Defendant denies all allegations in the Complaint, including denying, as to nearly all members of the putative class, the allegation that it employed those individuals (which

individuals Defendant contends were employed by separate corporations).  On or about May 3, 2021, Defendant filed an answer (the "Answer") to the Complaint, contesting the claims asserted in the Complaint, and asserted various defenses and affirmative defenses, including that no notice was required under the WARN Act because any "employment loss" by any "affected employee" was due to a natural disaster, specifically, due to COVID-19 (the "natural disaster defense").

4.     In response to Defendant's contention that most members of the putative class were employed by other entities, the Class Representative contends that Defendant was the "W-2 employer" and that, to the extent any other affiliated entities nominally employed any of the members of the putative class, that those other entities were "joint employers" or a "single employer," such that Defendant should be held liable.  Defendant disputes those contentions.

5.     Prior to the filing of the Complaint, and to the best of the Parties' knowledge, no federal court had ruled on application of the natural disaster defense to layoffs related to COVID-19.  During the pendency of this matter, federal District Courts have issued conflicting decisions on the issue and, to date, no federal Court of Appeals has ruled on the issue.

6.     The Parties have engaged in informal negotiations concerning resolution of the Class Representative's claims since in or about February 2021.

7.     On or about April 1, 2021, a Scheduling Order was entered.

8.     On or about April 22, 2021, the Parties exchanged Initial Disclosures.

9.     On or about June 28, 2021, the Class Representative served her First Set of Interrogatories, First Set of Requests for Admissions and First Set of Requests for Production of Documents on Defendant.  Also, on that same day, the Class Representative asked Defendant for available dates in September to hold depositions of witnesses listed in Defendant's Initial Disclosures.

10.    On or about July 7, 2021, Defendant moved to stay proceedings and deadlines in this matter based on the pending appeal of a decision concerning application of the natural disaster defense to COVID-19, in a different WARN Act case, *Benson v. Enterprise Leasing Company. of Orlando, LLC, et al.,*, Case No. 6:20-cv-891-Orl-RBD-LRH (M.D. Fla. 2020) which, after the denial of a motion to dismiss, the Eleventh Circuit had agreed to hear on interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), Case No. 21-11911 (the "*Enterprise* Appeal").

11.    On or about July 28, 2021, Defendant served objections to all of the Class Representative's written discovery requests.

12.    On or about August 4, 2021, the Class Representative filed an opposition to Defendant's Motion to Stay.

13.    On or about August 6, 2021, Class Representative conferred with Defendant concerning the discovery responses and the blanket objection based on the pending *Enterprise* Appeal.

14.    On or about September 3, 2021, Class Representative filed a motion to compel Defendant to respond to her written discovery and to provide dates for the depositions of witnesses, as requested by Class Representative.

15.    On or about September 17, 2021, Defendant filed an opposition to the Class Representative's motion to compel.

16.    On or about September 23, 2021, the Class Representative filed a notice of supplemental authority to inform the Court that the Eleventh Circuit granted the *Benson* parties' request to stay briefing in the *Enterprise* Appeal pending approval by the district court of their class action settlement.

17.     On or about December 17, 2021, the Parties conferred about a date for mediation. This same date, the Court granted in part, and denied in part Plaintiff's motion to compel.

18.     On or about December 20, the Parties agreed to a mediation date of March 22, 2022.

19.     On or about January 26, 2022, the Class Representative served Defendant with deposition notices and additional discovery requests.

20.     During January and February 2022, the Parties had a series of discussions concerning discovery and necessary data to be produced in advance of mediation and ultimately reached agreement on the information that Defendant would produce.

21.     On or about February 25, 2022, Defendant produced data in accordance with the Parties' agreement.

22.     Following review of Defendant's production, the Class Representative requested additional information, which Defendant provided in advance of mediation.

23.     On March 22, 2022, the Parties attended a virtual mediation with mediator Carlos Burruezo. As a result of the negotiations at the mediation and in an attempt to avoid further costly litigation and the uncertainties and risks associated therewith, the Parties have agreed to enter into the Settlement Agreement, which includes certification, for settlement purposes only, of a proposed Class, and which is conditioned upon Court approval.

**<u>Class Certification</u>**

24.     Class certification pursuant to Fed. R. Civ. P. 23 requires that each of the four prerequisites for certification, namely Fed. R. Civ. P. 23 (a)(1), (2), (3) and (4) be met and, in addition, that at least one of the conditions set forth in subparts of Fed. R. Civ. P 23(b), namely 23(b)(1)(A), 23(b)(1)(B)(2) <u>or</u> 23(b)(3), be satisfied. The Parties agree for purposes of Settlement only, that the WARN Act Litigation should be certified as a class action, comprised of all persons

who worked at or reported to Rosen Inn, Rosen Inn International, Rosen Inn at Pointe Orlando, Rosen Inn Lake Buena Vista, Rosen Plaza Hotel, Rosen Centre Hotel, Rosen Shingle Creek and Rosen Hotels and Resorts, Inc. (the "Facilities") which employed 50 or more employees, excluding part-time employees (as defined under the WARN Act), who were arguably laid off due to COVID, without cause on their part, after on or about March 26, 2020, as part of the mass layoffs at the Facilities, and who do not file a timely request to opt-out of the class (the "Class").  Defendant represents, for purposes of the Settlement Agreement *only*, that based upon a thorough and good faith review of available records, there is a total of 3631 individuals who meet the above Class definition and those individuals are listed on Schedule 1 to Exhibit A to this Memorandum.  The Parties have agreed for the purposes of the Settlement only,[2] that all the prerequisites for certification of the proposed Class are present, as set forth below.

    (a)    **Numerosity**:  For purposes of the Settlement only, the Parties agree that the numerosity factor of Fed. R. Civ. P. 23(a)(1) is met because the proposed Class numbers approximately 3631 former employees, making joinder impracticable.

    (b)    **Commonality:**  For purposes of the Settlement only, the Parties agree that common questions of law and fact are applicable to each Class member, including, (1) whether Defendant was the employer of the putative Class members; (2) whether a plant closing or mass layoff occurred as defined in the WARN Act; (3) whether Defendant was excused from the 60-day notice requirement under the WARN Act; and (4) whether Defendant was

---

[2] Defendant does not concede that certification is appropriate outside of the Settlement Agreement and preserves all rights to oppose certification if, for any reason, the Settlement does not become effective.

obligated to pay the class members sixty days' pay and benefits.  In short, the Parties agree for purposes of the Settlement only that the Class members' claims raise common questions regarding the circumstances surrounding their layoffs and, thus, the alleged violations of the WARN Act.

(c)     **Typicality**:  For purposes of the Settlement only, the Parties agree that the typicality factor of Fed. R. Civ. P. 23(a)(3) is met here as "the claims . . . of the [Class R]epresentative . . . [are] typical of the claims . . . of" the other proposed Class members.

(d)     **Adequacy of Class Representative:**  For purposes of the Settlement only, the Parties agree that the adequacy factor of Fed. R. Civ. P. 23(a)(4) is also met.  The Court should find that the Class Representative and Class Counsel adequately represent the interests of the Class members based on the Declaration of Mary E. Olsen (the "Olsen Declaration") attached as Exhibit B, hereto.  As demonstrated by the Olsen Declaration, Class Counsel are well qualified and experienced to represent the proposed Class. Collectively, they have been appointed as class counsel in more than one hundred WARN actions.  Further, as shown in the Olsen Declaration, the Class Representative has no conflict of interest with the other proposed Class members, has diligently prosecuted, represented and protected the interests of the proposed Class, and will continue to diligently prosecute, represent and protect the interests of the proposed Class.

25.     For purposes of the Settlement only, the Parties agree that the proposed Class also meets the requirements of Fed. R. Civ. P.23(b)(3).  Common questions of law and fact that affect

all members of the proposed Class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy for the following reasons:

(a)     No proposed Class member has an interest in individually controlling the prosecution of a separate action under the WARN Act.

(b)     No other litigation concerning the WARN Act rights of any proposed Class member is currently pending to the Parties' knowledge.

(c)     Concentrating all potential litigation concerning the WARN Act rights of the proposed Class members in this Court will avoid a multiplicity of suits, will conserve judicial resources and the resources of the Parties, and is the most efficient means of resolving the WARN Act rights of all proposed Class members.

(d)     Administration of this action as a class action will not be complicated or difficult because the names and addresses of the proposed Class members have been established from available records unless otherwise instructed by the proposed Class member or as updated through the efforts of Class Counsel.

26.     For the foregoing reasons, the Parties seek a Court order certifying this case as a class action for settlement purposes only as to the WARN Act claims of the proposed Class members, and appointing Lankenau & Miller, LLP, The Gardner Firm, P.C. and Wenzel Fenton Cabassa, P.A. as class counsel and appointing Yolanda Turner as the Class Representative.

**The Settlement**

27.     The Class Representative and Defendant ask the Court to approve the Settlement Agreement, for the following reasons:

(a)     There are substantial disputes concerning Defendant's liability, including but not limited to whether the natural disaster defense affords a complete defense to liability, and whether the Defendant is the employer, for purposes of the WARN Act, of the Class members.  If this matter is litigated rather than settled, to the extent these disputes are resolved in favor of Defendant, the Class would not be entitled to any recovery in this action.

(b)     The Settlement Agreement reflects the result of arms' length, good faith negotiations, spanning months, with the assistance of a mediator experienced in class action lawsuits and settlements.

(c)     The Settlement Agreement fully resolves the WARN Act Litigation and provides fair and reasonable monetary benefits to the Class members under the circumstances of this case.

(d)     The Settlement Agreement allows the Parties and the Class to avoid extensive, costly litigation, with uncertain outcome, over the issues in the Complaint.

(e)     The Parties agree to the certification of the Class.

(f)     Yolanda Turner shall be named as Class Representative and Lankenau & Miller, LLP, The Gardner Firm, P.C. and Wenzel Fenton Cabassa, P.A. shall serve as Class Counsel.

(g)     Pursuant to the terms of the Settlement Agreement, the Gross Settlement Fund is $2,300,000.

(h)     Payments from the Gross Settlement Fund shall be made net of all applicable employment taxes as determined to be due by the Settlement Administrator, including, without limitation, FICA/Medicare tax and federal, state and local income and unemployment tax withholding.  All applicable employer tax contributions, including, all applicable employer tax contributions, including, without limitation, the employer's share of FICA/Medicare tax and any federal and state unemployment tax due ("Employer Portions"), shall be calculated by the Settlement Administrator and paid by the Defendant to the Settlement Administrator, in addition to the Gross Settlement Fund.

(i)     If the Court grants final approval of the Settlement, it will become effective upon the date that the Final Approval Order is entered (the "Effective Date").

(j)     Within Five (5) business days of the Effective Date, Defendant shall wire $2,300,000, plus the Employer Portions, to the Qualified Settlement Fund, according to instructions supplied by Class Counsel and/or the Settlement Administrator.

(k)     Following receipt in the Qualified Settlement Fund, the Gross Settlement Fund shall be distributed, as shown on Schedule 1, attached hereto, and as follows: (a) the sum of $7,500 to the Class Representative (the "General Release Payment"); (b) one-third of the Gross Settlement Fund, net of the one-time General Release Payment, shall be paid to Class Counsel as Class Counsel's fees ("Class Counsel's Fees").  In addition, Class Counsel is entitled to be paid from the Gross Settlement Fund for their litigation

expenses (including costs associated with the Class Representative's share of the Mediator's fee; the production and mailing of the Class Notice and the fees and expenses of the Settlement Administrator) ("<u>Class Counsel's Expenses</u>")[3] ; (c) the balance of the Gross Settlement Fund shall be allocated as shown on Schedule 1 to the Settlement Agreement, which reflects each Class member's share of the Gross Settlement Fund, after the deduction of the General Release Payment, Class Counsel's Fees and Class Counsel's Expenses (the "<u>Pre-tax Net Amounts</u>").

(l)  Any Settlement distribution to each Class member will be reported on an IRS Form W-2.

(m)  If a distribution is returned to the Settlement Administrator or Class Counsel as undeliverable, Class Counsel and/or the Settlement Administrator will attempt to locate a current address for the Class member.  The Parties agree that any amounts payable to Class members which have not been deposited, negotiated or cashed within 180 days of the initial Settlement distribution to the Class shall be "Residual Funds," to be distributed as follows: (i) first, used to make distributions to additional Class Members, if any, that may be identified and agreed to by the Parties after Class Counsel have made the initial settlement distribution and who fall within the Class definition herein but who did not appear on Schedule 1 ("<u>Additional Class Members</u>"); (ii) second, distributed to Class members who cashed, negotiated or deposited their initial Settlement disbursement, on a *per capita* basis in a supplemental

---

3  Class Counsel's Expenses (which include costs associated with the mediation; the production and mailing of the Class Notice and the fees and expenses of the Settlement Administrator) are estimated to be approximately $92,000.

distribution (the "Supplemental Distribution") so long as Class Counsel determines, in their sole discretion, that such distribution is feasible and (iii) last, to the extent any Residual Funds remain, those shall be paid to Second Harvest Food Bank of Central Florida, a non-profit 501(c)(3) charitable organization, as the designated cy pres. For avoidance of doubt, Defendant will receive no reversion of any uncashed/undeliverable settlement check.

(n)     The Class Representative, on her own behalf and on behalf of each member of the proposed Class who does not effectively opt-out of the Class, and on behalf of their respective predecessors, successors, heirs, executors, trustees and assigns, affiliates and subsidiaries (collectively, the "Releasing Parties"), does hereby fully and forever release and discharge Defendant, its parents, subsidiaries, and any other affiliated entities (including but not limited to Rosen 6327, Inc., Rosen 7600, Inc., Rosen, 9000, Inc., Rosen 9939, Inc., Rosen 9956 B, Inc., Rosen Centre, Inc., Rosen Plaza, Inc., Rosen Vista, Inc., and Rosen Millennium Technology Group, Inc.), and their respective officers, directors, shareholders, agents, employees, contractors, partners, members, managers, benefit plans, plan administrators, accountants, attorneys, representatives, and all of their respective predecessors and successors (collectively, the "Released Parties"), from (a) all claims that were asserted in the WARN Act Litigation, and (b) all claims that could have been asserted under the WARN Act in the WARN Act Litigation (collectively, the **"Released Claims"**), *provided, however*, that this release shall not become effective until approval of the Settlement

Agreement by the Court on a final basis, combined with payment by Defendant to the Settlement Administrator of the Gross Settlement Fund and the Employer Portions. Further, upon approval of the Settlement Agreement by the Court on a final basis, combined with payment by Defendant to the Settlement Administrator of the Gross Settlement Fund and the Employer Portions, the Class Representative, on her own behalf and on behalf of her predecessors, successors, heirs, executors, trustees and assigns, does hereby fully and forever release and discharge the Released Parties of all claims related to her employment, furlough and separation of employment in exchange for the General Release Payment (the "Additional Consideration Released Claims"). The Released Claims and the Additional Consideration Released Claims do not include any right a Party or Class member may have to enforce the terms of the Settlement Agreement.

**The Contents of the Class Notice**

28.     The Parties submit that the proposed Class Notice, a copy of which is attached hereto as Exhibit C, meets the requirements of Fed. R. Civ.P. 23(c)(2)(B).  That rule, in pertinent part, provides as follows:

"The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

29.     The proposed Class Notice satisfies each of the foregoing requirements.  The Notice states the nature of the action, the Class claims, and the issues and defenses.  The Notice also states that a proposed Class member may enter an appearance through counsel and that the Settlement Agreement, when approved, will be binding on all proposed Class members.  The Notice also sets forth the terms of the proposed Settlement Agreement and the right of each proposed Class member to opt-out or object to the proposed Settlement Agreement and the time and manner for doing so. The Notice also provides each proposed Class member with their individual, projected pre-tax Settlement amount. The Notice also apprises the proposed Class, among other things, that complete information regarding the Settlement Agreement is available upon request from Class Counsel and that any proposed Class member may appear and be heard at the hearing on approval of the Settlement Agreement. In addition, the Notice informs the proposed Class members of the request for the approval of attorneys' fees and expenses to Class Counsel.  See Fed.R.Civ.P. 23(h).

## The Manner of Notice

30.     As to the manner of giving notice, Fed. R. Civ.P. 23(c)(2)(B) provides, in pertinent part, as follows:

> "For any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort."

31.     An individual mailing to each class members' last known address has been held to satisfy the "best notice practicable" test.   *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (individual mailings satisfy Rule 23 (c)(2)).

32.     The Settlement Agreement provides that the Settlement Administrator will mail the Notice by first class mail, postage prepaid, to the Class members at their last known addresses as set forth on Schedule 1 to the Settlement, unless updated through the efforts of Class Counsel or

the Settlement Administrator.  The fairness hearing will be timed so that the Class Members will have not less than thirty-five (35) days from the date of the Notice mailing to ensure that Class Counsel has received their opt-out or objection to the Settlement Agreement.  The Parties submit that giving notice in this manner satisfies the "best notice practicable" test.  In the case of any returned envelopes, Class Counsel or the Settlement Administrator will forward to corrected addresses to the extent they may be obtained.

### The Court Should Preliminarily Approve the Settlement Agreement Pursuant to Fed. R. Civ. P.   23

33.     The Eleventh Circuit has recognized that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits."  *In re United States Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *see also Gevaerts v. TD Bank, N.A.*, 2015 WL 6751061, at *4 (S.D. Fla. Nov. 5, 2015) ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements.").  Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length.  Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice...."  *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (citations omitted).

34.     As a general matter, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  4 Alba Conte & Herbert Newberg, Newberg on Class Actions §11.50, at 155 (4th ed. 2002).

35.     Although Rule 23(e) does not specify any particular procedure as to how a court should review a class action settlement, courts in this Circuit have adopted a two-step procedure consisting of (a) preliminary approval of the settlement before notice is given to class members,

and (b) a subsequent "fairness hearing" at which all class members have an opportunity to be heard on whether final approval of the settlement should be granted.  *See Bennett v. Behring Corp*., 737 F.2d 982, 985 (11th Cir. 1984*)*.  "At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the 'range of reasonableness.'"  4 Newberg on Class Actions § 11.26 (4th ed. 2010).  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.,* 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010)." *Almanzar v. Select Portfolio Servicing, Inc.*, 2015 WL 10857401, at *1 (S.D. Fla. Oct. 15, 2015).

    36.    As shown herein, preliminary approval of the Settlement Agreement is warranted. The Settlement Agreement is the result of good faith, arm's length negotiations culminating at a mediation between capable adversaries.  The Parties began discussions with respect to a potential compromise of the WARN Act litigation more than a year before the mediation.  Both Parties are represented by counsel with extensive experience and expertise in employment and class action matters.  Notably, Class Counsel have collectively been appointed as class counsel in over one hundred (100) WARN Act cases.  Class Counsel has the experience and skill to both vigorously litigate WARN Act claims and to determine when and to what extent settlement is appropriate. They have exercised that judgment in this case with respect to the Settlement Agreement.  The Settlement Agreement has no obvious deficiencies and falls well within the range of reasonableness.  Further, the factors present here which support final approval, as detailed in the section below, overwhelmingly support preliminary approval of the Settlement Agreement.

    37.    Accordingly, the Court should preliminarily approve the Settlement Agreement. As part of the preliminary approval of the Settlement Agreement, the Parties respectfully request

that the Court should set a Fairness Hearing that, subject to the Court's calendar, would be held

approximately sixty (60) days following preliminary approval of the Settlement Agreement

**The Court Should Finally Approve the Settlement As Fair, Reasonable And
Adequate To The Class At The Fairness Hearing Pursuant To Fed. R. Civ. P. 23**

38.     At the Fairness Hearing, the Parties submit that the Court should finally approve

the Settlement.

39.     Courts in the Eleventh Circuit consider the following in determining the

reasonableness of class action settlements: (1) the influence of fraud or collusion on the parties'

reaching a settlement, (2) the likelihood of success at trial, (3) the range of possible recovery and

point on or below the range of possible recovery at which a settlement is fair, adequate and

reasonable, (4) the complexity, expense and duration of litigation, (5) the substance and amount

of opposition to the settlement, and (6) the stage of proceedings at which the settlement was

achieved. *Bennet,* 737 F.2d at 986.

40.     Each of the above-cited factors favors final approval of the Settlement

Agreement.

41.     In assessing the first factor, courts respect the integrity of counsel and presume

the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is

offered. *Dorado v. Bank of Am., N.A.*, No. 1:16-CV-21147-UU, 2017 WL 5241042, at *5 (S.D.

Fla. Mar. 24, 2017). There is no evidence of fraud or collusion here. The proposed Settlement

Agreement resulted from arm's length negotiations between the Class Representative and

Defendant conducted by capable, experienced attorneys and with the assistance of a seasoned

and respected mediator, Carlos Burruezo. "Where the parties have negotiated at arm's length, the

Court should find that the settlement is not the product of collusion." *Saccoccio v. JP Morgan

Chase Bank*, *N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014). In fact, courts have consistently held

that the presence of an independent mediator negates any suggestion of fraud or collusion. *See,

e.g., Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at *8 (S.D. Fla. Apr. 13, 2016) (use of

mediator indicates there is "no suggestion of fraud or collusion"); *Hall v. Bank of Am., N.A.*, 2014 WL 7184039, at \*6 (S.D. Fla. Dec. 17, 2014).  There was no fraud or collusion in reaching the settlement.  During this process, the Parties thoroughly evaluated their claims and defenses, allowing Class Counsel to negotiate what they believe is the most optimal settlement on behalf of the Class. The absence of fraud and collusion is evidenced by a settlement reached after more than a year of litigation, including motion practice and discovery, and also at the conclusion of a full day's mediation session.  In sum, the proposed Settlement Agreement reached here resulted from concessions and compromise by both sides and is the product of the functioning adversarial and negotiations processes, not fraud or collusion.  Accordingly, the first factor supports approval of the Settlement Agreement.

42.      As to the second factor, the likelihood of success at trial entails a look at, though not a definitive judgment about, the risks of the litigation and a comparison of what class members will receive and what they give up in return. *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 895-96 (6th Cir. 2019).  The only thing that Class members are releasing here are claims relating to the WARN Act, the very claim that is being settled. In return, they will receive meaningful payments that they otherwise would not have gotten. And in the judgment of Class Counsel, those payments are fair, adequate and reasonable in light of the risks of litigation and the real possibility of no recovery. Class Counsel have taken account of, *inter alia*, (a) Defendant's argument that mass layoffs attributable to the COVID-19 pandemic are exempted from the WARN Act's notice requirement because of the "natural disaster" provision in 29 U.S.C. § 2102(b)(2)(B); (b) the argument that Defendant did not initially expect the layoffs to last more than six months and that it gave notice as soon as it became apparent that it would, thus arguably eliminating liability under 29 U.S.C. § 2102(c); (c) the argument that Defendant acted with a subjective intent to comply with the WARN Act and an objective reasonableness in its application given the legal and factual uncertainty regarding the COVID-19 pandemic and therefore that any recovery might be reduced below the usual statutory amount in the Court's discretion, under 29 U.S.C. § 2104(a)(4), and (d) the argument that a substantial majority of the

members of the proposed class were employed not by Defendant, but by related entities. Certainly, if this litigation were to continue, the Class Representative and Defendant would continue to vigorously advocate for their respective positions on various legal and factual issues, leading to continued significant motion practice and either a dismissal based on the natural disaster exemption or a likely trial.  Trial and a potential of post-trial appeals further increases the risks present here, as well as costs, and prolongs resolution.  Absent settlement, the resolution of factual issues relevant to each class member's claims would result in protracted, expensive litigation.  The proposed settlement will save considerable time and resources that would otherwise be spent litigating disputes resolved by the proposed settlement.  Thus, this factor weighs in favor of approving the Settlement Agreement.  See *Bennett*, 737 F.2d at 986 ("In addition, our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."); *Ayers v. Thompson*, 358 F.3d 356, 2369 (5th Cir. 2004) (holding that settlement would avoid risks and burdens of potentially protracted litigation weighed in favor of approving settlement).

43.     Third, the Settlement Agreement should be approved because the Gross Settlement Fund of $2,300,000 compares favorably to the limited range of damages available under the WARN Act that could potentially be recovered at trial.  In her Complaint, Plaintiff seeks to recover 60 days' wages and benefits pursuant the WARN Act, 29 U.S.C. § 2104 (a)(1)(A).  Here, the maximum WARN Act damages for the Class were estimated to be approximately $9,900,000.  However, while Plaintiff would argue that she and the class members are entitled to recover the full 60-days of wages made available under the WARN Act, Defendant argued instead that Plaintiff's and the putative class members' potential damages should be eliminated, or at least substantially reduced due to the uncertainty surrounding COVID-19 and related government closures and effects on the economy in 2020.  If accepted by the Court, this argument by Defendant could have jeopardized any meaningful back-pay award to Plaintiff and the Class Members.  Further, the settlement proposed in the Settlement Agreement falls within the reasonable range of possible recovery for members of the settlement

classes.  For example, recently in a case styled *In re The Hertz Corporation, et al*., Del. Bkt. Ct.

Case No.: 20-11218-MFW (Doc. 5862), the United States Bankruptcy Court for the District

Court of Delaware approved a WARN Act class action settlement for an amount per class

member that was less than what is proposed here.  As a second example, in the *Benson v.*

*Enterprise* matter, if final approval is granted by the Court, class members there will likely

receive somewhere between $400 - $500, before taxes are deducted.  This recovery falls well

within the range of reasonableness for settlement purposes. *See also, Molina v. Ace Homecare*

*LLC*, No. 8:16-CV-2214-T-30TGW, 2019 WL 3225662, at *1 (M.D. Fla. June 28, 2019), report

and recommendation adopted, No. 8:16-CV-2214-T-27TGW, 2019 WL 3219931 (M.D. Fla. July

17, 2019)(approving class action settlement in which WARN Act class members receive $500

net payments).  Similar to this case, the Hertz and *Benson* WARN Act matters  also revolved

around a mass layoff engaged in by rental car companies around the time COVID-19 began.

Also, as in *Hertz* and *Benson*, the two core defenses in this litigation include the natural disaster

exception and the unforeseeable business circumstance defense to the WARN Act's notice

provision.

   44. With regard to factors four and six, the Settlement Agreement was reached at

mediation, after more than a year of litigation, which included motion practice.  This class action

WARN Act litigation involved claims against Defendant for thousands of employee layoffs, at

various times during 2020, from approximately eight Facilities.  The WARN Act Litigation was,

and would have continued to be, complicated.  Further, the litigation would have likely spanned

years and been expensive.  In light of the Settlement, both sides can avoid the delay and expense

of further litigation and any risks attendant thereto.  The Parties possess "ample information with

which to evaluate the merits of the competing positions."  *Ayers*, 358 F.3d at 369.  Specifically,

the Class Representative has obtained information from Defendant to allow a well-informed and

comprehensive settlement of this litigation.  In addition to this information, the Parties have

extensively analyzed legal authorities regarding WARN Act claims on a nationwide basis,

particularly those involving the natural disaster exception under the WARN Act.  Counsel for the

Parties have discussed their claims and defenses with each other.  As such, the Parties believe that they have sufficient and meaningful information to reach a fair, reasonable, and adequate settlement.  The Settlement Agreement was negotiated based on the Parties' realistic, independent assessments of the merits of the claims and defenses in this case and should be approved.  When evaluating a proposed class action settlement, the Court must balance the benefits of a certain and immediate recovery through settlement against the inherent risks of litigation.  See *Bennett*, 737 F.2d at 986; *Reed v. General Motors Corp*., 703 F.2d 170, 172 (5th Cir. 1983).  Here, recovery under the Settlement Agreement is favorable for the Class given the general uncertainty surrounding all litigation and the risks specific to this case.  If this litigation proceeds, Defendant intends to continue to vigorously defend the claims, and the Class Representative will face legal challenges by Defendant, including challenges to class certification and the merits of their claims, as well as a dispositive motion.  Any one of these challenges could significantly prolong the litigation at considerable expense and risk to the Parties, potentially resulting in no recovery for the Class.  Each of these phases of litigation presents uncertainty and risks, which the settlement allows the Parties to avoid.  Further, although Defendant denies liability and has asserted affirmative defenses to the claims, Defendant nevertheless recognizes, as Plaintiff does, the costs and risks inherent in proceeding to trial. The Settlement Agreement here provides immediate relief and, under the circumstances present in this case, is preferable to protracted litigation and uncertain results in the future.  In sum, the Settlement Agreement is fair and reasonable when taking into consideration the uncertainty of the underlying factors and elements critical to this case, that is, whether Defendant would prevail on either the natural disaster exception and/or unforeseeable business circumstance (or both), and, of course, whether Plaintiff and the class members could establish liability.  Indeed, "[a] proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein v. O'Neal, Inc.,* 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010). Weighed against the risks associated with litigation, the proposed settlement is fair, reasonable,

and adequate.  Accordingly, the fourth and sixth factors support approval of the Settlement Agreement.

45.     Finally, with regard to the fifth factor, the Settlement Agreement as proposed has the obvious support of the Class Representative, Class Counsel, and Defendant.  The Parties believe, based on their independent assessments and with the assistance of a seasoned and respected mediator, that settlement is in their respective best interest.  The Class Representative and Class Counsel have likewise concluded that the proposed settlement is in the best interest of the Class. Furthermore, the Parties anticipate that the settlement will receive broad support from the Class.  Importantly, as noted above, the Class member released claims are limited to those under the WARN Act and it is unlikely that Class members will oppose releasing their WARN Act claims which none brought individually—and potentially were unaware existed.  Even if any Class members do not agree with the terms of the proposed Settlement Agreement, he or she is protected by the right to opt-out of the proposed Class or object, which is made clear in the Settlement Agreement and Class Notice.

46.     The Parties believe that the Settlement Agreement represents a fair, reasonable, and adequate settlement and that the above factors weigh in favor of final approval of the Settlement Agreement and is therefore in the best interest of the Parties.

47.     Accordingly, the Parties respectfully request the Court to schedule a hearing for the final consideration and approval of the Settlement Agreement.

WHEREFORE, the Parties respectfully request that the Court enter the proposed Form of Order, attached hereto as Exhibit D, (1) preliminarily approving the Settlement Agreement between the Parties; (2)  approving the form and manner of Notice to Class and the right to opt-out or object to the proposed Settlement Agreement; (3)  scheduling a Fairness Hearing for the final consideration and approval of the Settlement Agreement and, ultimately, entering the

proposed Form of Final Approval Order, attached hereto as Exhibit E, finally approving the Settlement Agreement.

Dated:  April 28, 2022                    Respectfully submitted,


                                          _/s/___Mary E. Olsen_____

                                          **THE GARDNER FIRM, PC**
                                          Mary E. Olsen (OLSEM4818) (phv granted)
                                          182 St. Francis Street
                                          Suite 103
                                          Mobile, Alabama 36602
                                          P: (251) 433-8100
                                          F: (251) 433-8181

                                          **WENZEL FENTON CABASSA, P.A.**
                                          Brandon J. Hill
                                          Florida Bar Number: 37061
                                          Direct No.: 813-337-7992
                                          LUIS A. CABASSA
                                          Florida Bar Number: 053643
                                          Direct No.: 813-379-2565
                                          1110 North Florida Ave., Suite 300
                                          Tampa, Florida 33602
                                          Main No.: 813-224-0431
                                          Facsimile: 813-229-8712
                                          Email: lcabassa@wfclaw.com
                                          Email: bhill@wfclaw.com

                                          **LANKENAU & MILLER, LLP**
                                          Stuart J. Miller (SJM 4276)
                                          100 Church Street, 8th Floor
                                          New York, NY 10007
                                          P: (212) 581-5005
                                          F: (212) 581-2122

                                          *Attorneys For The Class Representative And The Class*


                                          ***And***

_/s/   **Aaron L. Zandy**_____

**FORD & HARRISON LLP**
Aaron L. Zandy
Florida Bar No. 0125271
Email:  azandy@fordharrison.com
300 South Orange Avenue
Suite 1300
Orlando, FL  32801
(407) 418-2300  Telephone

**FORD & HARRISON LLP**
Shane T. Munoz
Florida Bar No.
Email:  smunoz@fordharrison.com
101 E. Kennedy Boulevard, Suite 900
Tampa, FL 33602
(813) 261-7803  Telephone

_Attorneys for Defendant_

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of April, 2022 I filed the foregoing with the Clerk of the Court, which will send a notice of electronic filing to all counsel of record using the CM/ECF system.

s/ _Mary E. Olsen_____

WSACTIVELLP:13066639.1