## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

YOLANDA TURNER, individually and on
behalf of all others similarly situated,

        Plaintiff,

v.                                  **Case No: 6:21-cv-161-CEM-GJK**

ROSEN HOTELS AND RESORTS, INC.,

        Defendant.

_____

### REPORT AND RECOMMENDATION[1]

This cause came on for consideration without oral argument on the following

motion filed herein:

> **MOTION:** **Joint Motion for Order (1) Preliminarily Approving Settlement Agreement; (2) Approving Form and Manner of Notice to the Settlement Class; (3) Scheduling a Final Fairness Hearing for the Final Consideration and Approval of the Settlement Agreement; and (4) Finally Approving the Settlement Agreement (Doc. 42)**
>
> **FILED:** **April 28, 2022**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.

## I.   FACTUAL BACKGROUND

_____

[1] Magistrate Judge David A. Baker substituting for Magistrate Judge Gregory J. Kelly.

Plaintiff Yolanda Turner was employed by Defendant Rosen Hotels and Resorts, Inc. ("Rosen Hotels") until she was temporarily furloughed in April 2020 and subsequently laid off without adequate advance written notice of the layoff. Doc. 1 ¶¶ 8, 9. Rosen Hotels allegedly employed approximately 4500 employees at the eight hotel facilities: Rosen Inn, Rosen Inn International, Rosen Inn at Pointe Orlando, Rosen Inn Lake Buena Vista, Rosen Plaza Hotel, Rosen Centre Hotel, Rosen Shingle Creek and Rosen Hotels and Resorts, Inc. *Id.* ¶¶ 4, 6.

On January 22, 2021, Plaintiff, on behalf of herself and all others similarly situated, filed a Rule 23 class action complaint against Defendant for violation of the Worker Adjustment and Retraining Notification Act of 1988 (the "WARN Act"), 29 U.S.C. §§ 2101-2109, alleging that Rosen Hotels did not provide at least sixty days advanced written notice of a mass layoff or plant closing to each affected employee as required under the WARN Act. *See* 29 U.S.C. § 2102(a)(1). On May 3, 2021, Defendant filed an answer and affirmative defenses, asserting the employees were employed by separate corporations and the WARN Act's exception applied for layoffs "due to any form of natural disaster" under 29 U.S.C. § 2102(b)(2)(B). Doc. 20 at 5.

On July 7, 2021, Defendant filed a motion to stay these proceedings because the Eleventh Circuit had accepted an interlocutory appeal in *Benson v. Enterprise Leasing Company. of Orlando, LLC,* Case No. 6:20-cv-891-Orl-RBD-LRH (M.D.

Fla. 2020), to consider an undecided issue of law which was at the heart of this case —whether the "natural disaster" exception of the WARN Act applied to the COVID-19 pandemic. Doc. 31 at 7. When the parties subsequently reached a settlement in the *Enterprise* case, the Eleventh Circuit stayed the appeal and remanded it to the district judge. Case No. 6:20-cv-891-RBD-LHP (Doc. 125).[2] The parties had a "series of discussions concerning discovery and necessary data to be produced in advance of mediation" and they reached an agreement such that on February 25, 2022, Rosen Hotels produced certain data in accordance with the Parties' agreement. Doc. 43 ¶¶ 20, 21.

A month later, on March 22, 2022, the parties mediated the case and notified the Court that they had reached a settlement. Docs. 39, 40.[3] On April 28, 2022, the parties filed their Joint Motion for an Order to preliminarily approve their Settlement Agreement and their proposed notice to the settlement class. Doc. 42. The parties also seek to schedule a fairness hearing for the final consideration and approval of their Settlement Agreement. *Id.* On April 29, 2022, the Court ordered the parties to provide briefing regarding the applicability of *Johnson v. NPAS Solutions, LLC*, 975

---

[2] During the time that the Enterprise appeal was pending, Plaintiff filed a Motion to Compel certain discovery, contending that Defendant had only provided blanket objections to written discovery based on the pending *Enterprise* appeal; Defendant responded. Docs. 35, 36, 37. On December 20, 2021, the Court granted in part and denied in part the Motion to Compel overruling Defendant's objections based on *Enterprise* appeal but declining to compel Defendant to respond to the discovery because Plaintiff had failed to address any of Defendant's substantive objections. Doc. 38 at 5-6.

[3] On March 28, 2022, District Judge Mendoza ordered that the case of the Plaintiff Yolanda Turner would be closed and allowed the parties sixty days to move to re-open. Doc. 41. On April 28, 2022, the parties filed their Motion regarding the class action claims. Doc. 42.

F.3d 1244 (11th Cir. 2020), *petition for rehearing en banc pending*, No. 18-12344 (Nov. 9, 2020), Doc. 44, which the parties provided on May 9, 2022. Doc. 45.

## II. APPLICABLE LAW

### A. The WARN Act

The WARN Act was intended to enable employees "to adjust to the prospective loss of employment, to seek and obtain alternative jobs and . . . to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1(a); *Sides v. Macon Cnty. Greyhound Park, Inc.*, 725 F.3d 1276, 1281–82 (11th Cir. 2013). "At its core, the WARN Act was designed to give employees fair notice of their impending layoff." *Sides*, 725 F.3d at 1282 .

A WARN Act claim has three elements: "(1) a mass layoff [or plant closing as defined by the statute] conducted by (2) an employer who fired employees (3) who, pursuant to WARN, are entitled notice." *Id.* (quoting *Allen v. Sybase, Inc*., 468 F.3d 642, 654 (10th Cir. 2006)). A mass layoff is defined as:

> a reduction in force which . . . (A) is not the result of a plant closing; and (B) results in an employment loss at the single site of employment during any 30–day period for ... (i)(I) at least 33 percent of the employees (excluding any part-time employees); and (II) at least 50 employees (excluding any part-time employees); or (ii) at least 500 employees (excluding any part-time employees)[.]

*Id.* § 2101(a)(3). Another different section of the WARN Act, 29 U.S.C. § 2102(a), defines who should receive notice: "An employer shall not order a plant closing or

mass layoff until the end of a 60–day period after the employer serves written notice of such an order . . . to each affected employee." *Id*. § 2102(a)(1). An "affected employee" is one "who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by [his or her] employer." *Id*. § 2101(a)(5). "[E]mployees" include "[w]orkers on temporary layoff or on leave who have a reasonable expectation of recall. . . ." 20 C.F.R. § 639.3(a)(1)(ii). An "employment loss" means "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6–month period." 29 U.S.C. § 2101(a)(6).

### B. Rule 23 Class Action and Class Certification

A class may be certified only if (1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims of the representatives are typical of the claims of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly. Fed. R. Civ. P. 23(a). These prerequisites to class certification are referred to as "numerosity, commonality, typicality, and adequacy of representation," and are "designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims." *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000). "The class action is 'an

exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, 131 S.Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). The burden of establishing the propriety of class certification rests with the advocate of the class. *Valley Drug Co. v. Geneva Pharms*., Inc., 350 F.3d 1181, 1187 (11th Cir. 2003).

In addition to the prerequisites of Rule 23(a), at least one of the three alternative subsections of Rule 23(b) must be satisfied to certify a class. *Babineau v. Fed. Express Corp*., 576 F.3d 1183, 1190 (11th Cir. 2009). Plaintiffs seek certification under Rule 23(b)(3), which requires them to demonstrate (1) that questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Id*. Failure to establish any of the required elements of Rule 23(a) or Rule 23 (b) (3) precludes class certification. *Valley Drug*, 350 F.3d at 1188 (citation omitted). Even when the parties have not contested an element of Rule 23, "a court nevertheless has the responsibility of conducting its own inquiry as to whether the requirements of Rule 23 have been satisfied in a particular case." *Id*.

### III. PROPOSED SETTLEMENT (as to Class Action Requirements)

Turner, as class representative, alleged in the Complaint that Rosen Hotels had violated the WARN Act for failure to provide the required notice under the Act. The parties have agreed as part of the Settlement Agreement for the WARN Act Litigation, for purposes of settlement only,[4] certification of the following class comprised of:

> All persons who worked at or reported to Rosen Inn, Rosen Inn International, Rosen Inn at Pointe Orlando, Rosen Inn Lake Buena Vista, Rosen Plaza Hotel, Rosen Centre Hotel, Rosen Shingle Creek and Rosen Hotels and Resorts, Inc. (the "Facilities") which employed 50 or more employees, excluding part-time employees (as defined under the WARN Act), who were arguably laid off due to COVID, without cause on their part, after on or about March 26, 2020, as part of the mass layoffs at the Facilities, and who do not file a timely request to opt-out of the class (the "Class").

Doc. 43 at 6. The parties further agree to Plaintiff Turner's appointment as class representative, and for approval of appointment of the law firms of Lankenau & Miller, LLP, The Gardner Firm, P.C. and Wenzel, Fenton, Cabassa, P.A. as class counsel.

*1. Numerosity*

The parties agree that the numerosity factor of Fed. R. Civ. P. 23(a)(1) is met because the Proposed Class (described above) numbers approximately 3,631 former employees, making joinder impracticable. *Id*.; Doc. 43-1.

---

[4] Defendant's agreement on the issues are "for purposes of settlement only" and it "does not concede that certification is appropriate outside of the Settlement Agreement and preserves all rights to oppose certification if, for any reason, the Settlement does not become effective." Doc. 43 at 6 n. 2.

### 2. Commonality

The parties agree that common questions of law and fact regarding the circumstances surrounding their layoffs and, thus, the alleged violations of the WARN Act are applicable to each Class member, including, (1) whether Defendant was the employer of the putative Class members; (2) whether a plant closing or mass layoff occurred as defined in the WARN Act; (3) whether Defendant was excused from the 60-day notice requirement under the WARN Act; and (4) whether Rosen Hotels was obligated to pay the class members sixty days' pay and benefits.

### 3. Typicality

They also agree that the typicality factor of Fed. R. Civ. P. 23(a)(3) is met here as "the claims . . . of the [Class R]epresentative . . . [are] typical of the claims . . . of" the other proposed Class members.

### 4. Adequacy of Class Representative

The parties agree that the adequacy factor of Fed. R. Civ. P. 23(a)(4) is met because Plaintiff as Class Representative and her counsel as Class Counsel adequately represent the interests of the Class members based on the Declaration of Mary E. Olsen (the "Olsen Declaration") Doc. 43-2. Class Counsel are well qualified and experienced to represent the proposed Class and (collectively) have been appointed as class counsel in more than one hundred WARN Act actions. The Class Representative has no conflict of interest with the other proposed Class members,

and has diligently and will continue to prosecute, represent, and protect the interests of the proposed Class.

    5.  *Requirements of Fed. R. Civ. P.23(b)(3).*

The Parties agree that the proposed Class also meets the requirements of Fed. R. Civ. P.23(b)(3) because common questions of law and fact that affect all members of the proposed Class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy because: no proposed Class member has an interest in individually controlling the prosecution of a separate action under the WARN Act; there is no other litigation concerning the WARN Act rights of any proposed Class member currently pending (to the Parties' knowledge); concentrating all potential litigation concerning the WARN Act rights of the proposed Class members in this Court will avoid a multiplicity of suits, will conserve judicial resources and the resources of the Parties, and is the most efficient means of resolving the WARN Act rights of all proposed Class members; and administration as a class action will not be complicated because the names and addresses of the proposed Class members have been established from available records unless otherwise instructed by the proposed Class member or as updated through the efforts of Class Counsel. Doc. 43 at 8.

**IV. ASSESSMENT OF PROPOSED SETTLEMENT**

"Federal courts have long recognized a strong presumption in favor of class action settlements, and courts have been instructed to consider several factors in determining the fairness of a class action settlement." *Chambers v. Groome Transportation of Alabama, Inc.*, No. 3:14CV237-CSC, 2015 WL 9255332, at *2 (M.D. Ala. Dec. 17, 2015). The Eleventh Circuit has instructed the district court to consider the following factors: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011).

The Court finds that class certification of the WARN Act claim is appropriate. All of the potential class members—approximately 3,630—were terminated without cause on their part on March 26, 2020, without notice as part of mass layoffs at Rosen Hotels. Plaintiffs were entitled to receive the appropriate sixty-day notice under the WARN Act and did not.[5] Having reviewed the parties' Motion and exhibits, the Court finds that the class is so numerous that joinder of all members would be impracticable, there are questions of fact and law common to the class regarding the layoff, the claim of the Class Representative is typical of the claims of

---

[5] For purposes of settlement only, Defendants do not dispute these facts. Doc. 43.

the unnamed members and she will be able to represent the interests of the class adequately and fairly. Questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

In assessing the parties' proposed Settlement Agreement, the Court considers the parties' arguments that there are substantial disputes concerning Defendant's liability, including but not limited to (1) whether the "natural disaster defense" affords a complete defense to liability, and (2) whether Rosen Hotels is the employer, for purposes of the WARN Act, of the Class members or the individual facilities are separate employers. As the parties recognized, "[i]f this matter is litigated rather than settled, to the extent these disputes are resolved in favor of Defendant, the Class would not be entitled to any recovery in this action." Doc. 43 at 9. The parties contend that their Settlement Agreement "reflects the result of arms' length, good faith negotiations, spanning months, with the assistance of a mediator experienced in class action lawsuits and settlements; the Settlement Agreement fully resolves the WARN Act Litigation and provides fair and reasonable monetary benefits to the Class members under the circumstances of this case" and allows them "to avoid extensive, costly litigation, with uncertain outcome, over the issues in the Complaint" *Id.* at 10.

The *Enterprise* case, in which the WARN Act claims were similarly disputed and the "natural disaster" defense raised, is not precedential but is informative in the Court's consideration of the "anticipated complexity, expense, and duration of litigation." *See Faught*, 668 F.3d at 1240 (11th Cir. 2011). In *Enterprise*, the Eleventh Circuit granted an interlocutory appeal, and the parties ultimately reached a settlement in the case. *See Enterprise*, Case No. 6:20-cv-891-Orl-RBD-LRH (Doc. Doc. 125). Any interlocutory appeal based on the undecided applicability of the "natural disaster" defense in the WARN Act for Covid-19 based layoffs in this case would add significant delay to resolution of the parties' dispute. The parties note in the Settlement Agreement filed on April 28, 2022 that "to the best of the Parties' knowledge, no federal court had ruled on application of the natural disaster defense to layoffs related to COVID-19. . . [F]ederal District Courts have issued conflicting decisions on the issue, and to date, no federal Court of Appeals has ruled on the issue." Doc. 43-1 at 3.

The Gross Settlement Fund proposed by the parties in the Settlement Agreement is $2.3 million; payments will be made net of the employment taxes which will be paid by Defendant to the Settlement Administrator. Doc. 43 at 10. Class counsel will receive one-third of the settlement amount as their fees, net of litigation expenses estimated to be $92,000 for production and mailing of the Class Notice, etc. and the Mediator's Fees (and the proposed $7,500 payment to the Class

Representative[6]) to be distributed to the 3,631 class members based on a schedule, or $396 per class member for the sixty-day WARN period. In exchange for its payments under the Settlement Agreement, Defendant will receive a release from Plaintiff of all claims under the WARN Act on behalf of the proposed Class who do not opt out.

The Agreement explains the process by which the Settlement Awards will be made. Doc. 43-1. All notices and disbursements to the Class members will be made by first class mail to their last known addresses as set forth on Schedule 1 of the Settlement Agreement, provided by Defendant, unless updated through the efforts of Class Counsel or the Settlement Administrator. Notices to putative Class members will inform them of their right to opt out of the Class and the proposed settlement, and of the procedure for opting out, including applicable time limits. *Id*. ¶ 9. The mailing and the fairness hearing will be timed so that the Class members will have thirty-five days from the date of the mailing to ensure that the Parties have received their opt-out or objection to the Settlement Agreement. *Id*. ¶ 8. Within five business days of the effective date of the Court granting final approval of the Settlement, Defendant shall wire $2.3 million plus the "employer portions"[7] for taxes to the

---

[6] The Class Representative's *additional* settlement payment of $7,500 for a general release is addressed separately *infra*.

[7] The employer portions include applicable employment taxes such as FICA/Medicare tax and federal, state and local income and unemployment tax withholding. Doc. 43-2 at 6.

Qualified Settlement Fund. There are provisions made for any residual funds not deposited or cashed within 180 days. Doc. 43 at 11-12.

The Court finds that the settlement as proposed is fair, adequate, and reasonable, with the exception of the additional settlement payment of $7,500 to the Class Representative for a general release. As set forth above, there are a number of unresolved issues that make resolution of plaintiffs' claims uncertain and subject to substantial litigation risk in addition to the delay and expense inherent in any contested litigation. Given those circumstances and the evidence of arms-length bargaining behind the Settlement Agreement, the proposed compromise payment to the putative class can and should be preliminarily approved. Accordingly, it is respectfully recommended that the WARN Act class be certified and the Settlement Agreement be preliminarily approved with the proviso that the District Judge should defer the portion of the Settlement Agreement providing for an extra payment to the Named Plaintiff. In addition, of course, consideration of the allowance for attorneys' fees will be subject to additional proceedings as set forth in Rule 23.

As this Court has explained previously in a case involving the same issue with a payment to the named plaintiffs for a "general release" as part of a settlement for 1,365 employees in an action under the Fair Labor Standards Act:

> The parties agree that Named Plaintiffs will each receive $10,000 in exchange for executing a general release. Courts in this District have approved FLSA settlements with general releases . . . . The concern regarding the general releases here is that they are given in conjunction

with the settlement of a collective action and in amounts more frequently seen as *incentive awards to class representatives than as consideration for general releases*.

In *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020) (pending petition for rehearing en banc), the Eleventh Circuit held that incentive awards for class action representatives that compensate them for their time and reward them for bringing lawsuits are prohibited. "A plaintiff suing on behalf of a class can be reimbursed for attorneys' fees and expenses incurred in carrying on the litigation, but he cannot be paid a salary or be reimbursed for his personal expenses." *Id*. at 1257. The Eleventh Circuit stated that an incentive award "is roughly analogous to a salary . . . ." *Id*. "Incentive awards are intended not only to compensate class representatives for their time (*i.e.*, as a salary), but also to promote litigation by providing a prize to be won (*i.e.*, as a bounty)." *Id*. at 1258. Prohibiting incentive awards is also in line with Eleventh Circuit "precedent carefully scrutinizing settlements that give class representatives preferred treatment." *Id*. at 1259 n.9.

The parties argue that the general releases are not incentive awards and thus *Johnson* does not prohibit them. Doc. No. 107. They point out that Johnson is a class action case brought under Federal Rule of Civil Procedure 23. *Id*. at 5. They contend that the payments for the general releases are not the type of payment prohibited in *Johnson*. *Id*. at 6. The parties state that even after Johnson, courts have approved payments for general releases in FLSA cases. *Id*. They assert that general releases provide a significant value to employers. *Id.* at 7.

The Eleventh Circuit's holding in *Johnso*n was based in part on *Trustees v. Greenough*, 105 U.S. 527 (1882), which also was not a class action case. *Johnson*, 975 F.3d at 1255-60. The Eleventh Circuit noted that in *Greenough*, the Supreme Court rejected a private litigant's award for "personal services and private expenses." *Id*. at 1257.

Because the Eleventh Circuit did not attribute significance to *Greenough* not being a class action, no reason appears why this Court should attribute significance to this action being a collective action, and not a class action. *See Poblano v. Russell Cellular Inc*., 543 F. Supp. 3d 1293, 1295 n.1 (M.D. Fla. 2021) (declining to approve FLSA collective settlement agreement due to service awards to named plaintiffs and

rejecting argument that *Johnson* is distinguishable as a class action compared to a FLSA collective action: "The reasoning . . . is equally, if not more, compelling for the Court to conclude that it applies to collective actions brought under the FLSA."). Instead, it appears that under *Johnso*n, the relevant analysis is whether the payments are truly for Named Plaintiffs' time and to reward them for bringing this litigation. *See Johnson*, 975 F.3d at 1260.

They also argue that the general releases are valid because Defendants sought them to obtain "a complete resolution of all claims that the Named Plaintiffs might have against them rather than engaging in piecemeal litigation over each potential claim[,]" and that general releases are not otherwise obtainable in FLSA actions. Doc. No. 107 at 2. The parties proffer no other claims that Named Plaintiffs have or could have against Defendants, however. Doc. No. 107. Instead, the $10,000 payments to Named Plaintiffs appear to give them preferred treatment over the Settlement Collective Members, which was a concern underlying the Eleventh Circuit's decision prohibiting incentive awards in *Johnson*. *Johnson v. NPAS Solutions, LLC*, 975 F.3d at 1259 n.9. Also notably absent from the parties' presentations is any identification of what potential non-FLSA claims these three Named Plaintiffs *uniquely* possess so as to justify treating them differently.
. . .

Based on (1) *there being no distinguishing characteristics between Named Plaintiffs and the Settlement Collective Members; (2) the amount of the consideration given for the general releases; and (3) the apparent lack of any possible claims Named Plaintiffs may have or could have against Defendants other than the ones released in the Agreement, the payments to Named Plaintiffs for the general releases look like they are made to compensate Named Plaintiffs for their time and reward them for bringing suit*, making them prohibited incentive awards under *Johnson*.

It is noted that there is a pending petition for rehearing en banc in *Johnson. mandate withheld*, No. 18-12344 (Nov. 9, 2020). In addition, as recognized in the *Johnson* opinion itself, the ruling is something of an outlier among the circuits and is a significant change from long-standing practice.

In light of these circumstances and in consideration of the extensive professional efforts devoted by counsel here and the legitimate

> expectations of the parties, the Court may wish to defer ruling on the validity of the payments made under the general releases until *Johnson* is more settled. *See, e.g., Mosley v. Lozano Ins. Adjusters, Inc.*, No. 3:19-CV-379-TJC-JRK, 2021 WL 289031, at *1 (M.D. Fla. Jan. 28, 2021) (deferring ruling on the issue of the service award and retaining jurisdiction pending a final decision in *Johnson*, directing the parties to deposit the service award into the Court's registry pending "the Court's determination of the service award issue," and directing the parties to "notify the Court of the final decision in *Johnson* within fourteen days of the same").

*Thomas v. Amazon,* No. 6:19-cv-1528-RBD-GJK, Doc. 110 at 20-21 (M.D. Fla. March 9, 2022) (emphasis added), *report and recommendation adopted in pertinent part*, Doc. 113 (M.D. Fla. April 28, 2022) (deferring ruling on disputes over payments to name plaintiffs for "general releases" pending resolution in the *Johnson* litigation).

Against that backdrop and the issues raised in *Johnson* as set forth at length above, this Court ordered supplemental briefing from the parties on:

> the applicability of *Johnson v. NPAS Solutions*, 975 F.3d 1244 (11th Cir. 2020) (*petition for review en banc pending*) to the proposed settlement of this case, particularly with respect to the consideration for the named plaintiff associated with the general release.

Doc. 44. The parties argue in their Supplemental Brief that *Johnson* "is inapposite on the facts, as this case does not involve an incentive award, nor does it involve any other sort of award that is forbidden by any holding of *Johnson*." Doc. 45. They argue that the "relatively small payment" of $7,500 to the named Plaintiff in this case is not the "salary" or "bounty" the *Johnson* decision prohibits, nor is it something given to "a class representative 'simply by reason of his status.'" *Id.*.

Rather, they argue, "the payment is, expressly and actually, consideration for a general release that only the named Plaintiff gave. Honoring her duty to absent class members, the named Plaintiff did not bargain away their right to bring any suits or claims except under the WARN Act itself, the very thing this suit was about" and "the only release given by absent class members is a release of WARN Act claims." *Id.* at 2-3. They further argue that, as the Named Plaintiff, she was in a position to bargain away – for herself alone – a full release and this provision is not unusual in that an employer would be willing to obtain a general release from a former employee for $7,500 where that "former employee has shown herself to be aware of her rights and unafraid of litigation." *Id.* at 3. The parties cite post-*Johnson* cases from the Middle District finding settlement agreements with additional compensation for general releases from named plaintiffs did not involve the type of inventive award prohibited in *Johnson* because they were not "service awards." *Id.* at 4 (citing *Broughton v. Payroll Made Easy, Inc*., No. 2:20-cv-41-NPM (M.D. Fla. July 27, 2021); *Dozier v. DBI Servs. LLC*, No. 3:18-cv-972-BJD-MCR (M.D. Fla. Jan. 19, 2022)).

Be that as it may, the named plaintiff, uniquely, is being provided something of substantial value: the right to receive cash in exchange for "release" of unidentified claims. The other class members are not being offered this opportunity

for additional value. Thus, this special arrangement for the named plaintiff falls squarely within the proscription of *Johnson.*

However, the parties argue in the alternative, if the Court is not inclined to approve the "General Release Payment" for Plaintiff, that the Court: grant preliminary approval of the Settlement Agreement in all respects and reconsider the issue of the "General Release Payment" after class members have had an opportunity to object to the Settlement; or strike only the "General Release Payment" and related provision and approve the remainder of the Settlement Agreement. Doc. 45 at 5. Given the uncertainty surrounding the Eleven Circuit's *Johnson* decision and the impact on payments to named plaintiffs in class actions, and the good-faith basis of a former employee like Turner to negotiate a general release of all employment claims, the Court recommends that the Settlement Agreement be preliminarily approved, and the issues of the "General Release Payment" to Turner be deferred pending a final decision in *Johnson.*

## CONCLUSION

Based on the foregoing it is respectfully **RECOMMENDED** as follows:

1. The parties' Joint Motion for Preliminary Approval of the Settlement Agreement and Approving Form and Manner of Notice to the Settlement Class (Doc. 42) be granted in part and deferred as to the $7,500 payment

to the Named Plaintiff Yolanda Turner, which should be held in escrow until resolution of the *Johnson* decision.

2.  The District Judge preliminarily approve the parties' Settlement Agreement (Doc. 43-1) as fair, reasonable, and adequate; approve as to form, content, and procedure, the Notice set forth in the Agreement and its exhibits (Doc. 43-1); and order the parties to adhere to the deadlines set forth in the Motion and the Settlement Agreement.

3.  Solely for purposes of settlement, it is RECOMMENDED that the District Judge provisionally certify the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(2) as set forth below and allow class members to opt-out or object to the Settlement pursuant to the procedures and deadlines set forth in the Settlement Agreement. (Doc. 43-1 at ¶¶ 8-9):

> All persons who worked at or reported to Rosen Inn, Rosen Inn International, Rosen Inn at Pointe Orlando, Rosen Inn Lake Buena Vista, Rosen Plaza Hotel, Rosen Centre Hotel, Rosen Shingle Creek and Rosen Hotels and Resorts, Inc. (the "Facilities") which employed 50 or more employees, excluding part-time employees (as defined under the WARN Act), who were arguably laid off due to COVID, without cause on their part, after on or about March 26, 2020, as part of the mass layoffs at the Facilities, and who do not file a timely request to opt-out of the class. (Doc. 43-1 at ¶ FF).

4.  It is **RECOMMMENDED** that the District Judge find, based on the parties' stipulations, and for settlement purposes only, the following:

    a.  The above-described Settlement Class is so numerous that joinder of all members is impracticable;

    b.  There are questions of law or fact common to the Settlement Class;

    c.  The claims of the Class Representative are typical of the claims of the Settlement Class;

    d.  The Class Representative, Yolanda Turner, will fairly and adequately protect the interests of the Settlement Class;

    e.  The questions of fact or law common to the members of the Settlement Class predominate over the questions affecting only individual members; and

    f.  Certification of the Settlement Class is superior to other available methods for the fair and efficient adjudication of the controversy.

    g.  The Court has personal jurisdiction over the Settlement Class members (as defined above) and Defendant Rosen Hotels.

5.  It is **RECOMMMENDED** that the District Judge approve as Settlement Class counsel the law firms of Lankenau & Miller, LLP, The Gardner Firm, P.C. and Wenzel Fenton & Cabassa, P.A..

6.  It is further **RECOMMMENDED** that the District Judge

    a.  set a final approval hearing for a date at least sixty days from the date of any of the Order adopting this Report and Recommendation to address whether the proposed Agreement should be approved;

    b.  stay all proceedings in this case until further Order of the Court, except as may be necessary to implement the terms of the Settlement; and

c.  direct Class Counsel, pursuant to Rule 23(h), to file a motion for attorney's fees and costs no later than fourteen days before the objection deadline for class members.

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on June 15, 2022.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy